UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ANTOINE MANSON, § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. SA-21-CV-01181-XR |
| § | |
| B&S TRUCKING OF JACKSON, LLC, § | |
| MARIEL ARIAS-PADILLA, JJ&C § | |
| EXPRESS CORP., § | |
| § | |
| *Defendants*. § | |

**ORDER**

On this day came on to be considered the following: (1) Defendant's Motion for Partial Summary Judgment (ECF No. 38), (2) Defendant's Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Stephen Earle, M.D. (ECF No. 51); (3) Defendant's Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Russell Gill (ECF No. 52); (4) Defendant's Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Kerry Nelson (ECF No. 53); (5) Plaintiff's Motion for Sanctions Due to Spoliation of Evidence (ECF No. 55).

**BACKGROUND**

Plaintiff Antoine Manson alleges that on March 20, 2021, at about 3:00 a.m., he was traveling on Loop 1604 in Bexar County, Texas when he was struck by Defendant Mariel A. Arias-Padilla, who was driving a commercial motor vehicle within the course and scope of her employment with Defendants B&S Trucking of Jackson, LLC and JJ&C Express Corp.[1] Arias-Padilla testified that she had been driving for about an hour at the time of the incident and that she

---

[1] During the hearing held on April 27, 2023, B&S stipulated that the driver was its employee, and that JJ&C was not Arias-Padilla's employer at the time of the accident.

1

had rested for about eight to ten hours before starting her trip. The force of the impact allegedly caused Mr. Manson to lose control and subsequently crash into the medium concrete barrier. A police report notes that at first Arias-Padilla said that she was unaware that her vehicle came into contact with Plaintiff's; however, when a law enforcement officer pointed out to her that paint transfer suggested that the two vehicles had come into contact, Arias-Padilla stated she must have struck the car.[2] Plaintiff alleges that he suffered major injuries as a result.

## DISCUSSION

### I. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

---

[2] ECF No. 55-1 at 3.

banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Analysis

Plaintiff alleges that: (a) Arias-Padilla was negligent in the operation of her vehicle, (b) her actions rose to the level of gross negligence, (c) B&S negligently hired, retained, supervised, and entrusted its vehicle to Arias-Padilla, and (d) B&S's acts rose to the level of gross negligence.

**Motion for Sanctions Due to Spoliation of Evidence (ECF No. 55)[3]**

Plaintiff argues that on March 30, 2021, his lawyers sent B&S a representation letter and requested that B&S preserve "any and all evidence" it may have "in regard[] to the incident in question." Plaintiff now argues that B&S failed to preserve Arias-Padilla's driver log and any vehicle inspection reports done on the vehicle before the accident. As sanctions Plaintiff requests that B&S's pending motion for partial summary judgment be denied and that the jury be instructed with an adverse inference jury instruction.

Federal Rule of Civil Procedure 37(e) states:

> Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

First, there is a dispute about whether the vehicle inspection reports and driver logs were kept in electronic form. B&S claims they were and that a former employee of theirs (a former dispatcher named Jesse Fernandez) used a program called Keep Trucking where driver log information was kept. The Plaintiff argues, based on a police officer's deposition where the officer testified that he thought he saw a paper log, that the driver log may exist in both a paper format

---

[3] On April 30, 2023, the Court granted Defendant's Opposed Motion for Leave to File a Supplemental Response to Plaintiff's Motion for Sanctions (ECF No. 69). Text Order (April 30, 2023). The Court therefore considers Defendant's supplemental response, as well as Plaintiff's arguments made in his response (ECF No. 65) in its analysis.

4

and as electronically stored information (ESI). Assuming that this information was ESI, the vehicle inspection reports are not relevant. Plaintiff relies on speculation and conjecture that these vehicle inspection reports could contain information related to their negligence claims. Plaintiff argues the truck's mirrors may have been broken.[4] None of the allegations contained in the First Amended Complaint allege any malfunction of the vehicle or that broken rear view mirrors were a cause of this accident. Pursuant to Fed. R. Civ. P. 26(b), a party may obtain discovery on any nonprivileged matter that is relevant to any party's claim. Since there were no allegations pled in the complaint that the vehicle was malfunctioning or that broken rear-view mirrors contributed to the accident, discovery of any vehicle inspection reports is not justified because they are not relevant.

Regarding the driver logs, Plaintiff argues that the accident occurred about 3:00 in the morning and that Arias-Padilla failed to pay attention because she may have been fatigued. Plaintiff relies on 49 CFR § 395.8(k) ("A motor carrier shall retain records of duty status and supporting documents required under this part for each of its drivers for a period of not less than 6 months from the date of receipt.") to support his argument that the driver log is discoverable. Although B&S had a regulatory obligation to maintain the driver logs, that is not dispositive of whether there has been a violation of Rule 37(e). The duty to preserve the driver logs was triggered when B&S knew that litigation was imminent. It is uncontested that date was between March 30, 2021, and April 8, 2021, when B&S received the March 30, 2021 preservation request letter from Plaintiff's counsel. At that time B&S was obliged to preserve Arias-Padilla's driver log. The Court is being a bit generous to the Plaintiff in this regard. The March 30, 2021, preservation request letter was overly broad, expansive, and failed to state with sufficient detail what ESI or evidence

---

[4] In the hearing on April 27, 2023, the Court asked whether there were any video or pictures of the truck post-accident. No specific answer was provided about whether any pictures confirmed any broken rear-view mirrors. But Plaintiff's expert witness noted where blind spots could exist on the vehicle and did not note any broken mirrors.

was sought to be preserved.[5] A party's duty to preserve specific types of evidence does not arise unless the party controlling the data or tangible evidence has notice of the data or tangible evidence's relevance. *See In re Old Banc One Shareholders Sec. Litig.*, No. 00 C 2100, 2005 WL 3372783, at *3 (N.D. Ill. Dec. 8, 2005). But in 18-wheeler cases, driver logs are routinely sought in discovery and should have been preserved. B&S acknowledged during the April 27, 2023, hearing that no efforts were made to preserve this information. The information kept in the Keep Trucking program was taken by the former dispatcher Jesse Fernandez when he left B&S on or about September 2021.

Yet the introductory language of Rule 37(e) requires that the ESI be "lost" and "cannot be restored or replaced." Neither party in this case has attempted to contact Jesse Fernandez to determine whether he still retains the Keep Trucking program and whether Arias-Padilla's driving logs from March 2021 still exist.

Rules are written to capture most scenarios, but regrettably cannot be written to address all instances. Here the Plaintiff had an expectation that driver logs would be maintained and kept by a motor carrier, and they were not. In any event, until it is shown that the driver logs have indeed been lost, any relief under Rule 37(e) is premature. Further, any relief seeking adverse jury instructions under Rule 37(e)(2) is improper because there has been no showing that B&S acted with the intent to deprive the Plaintiff of the driver log information. The Court rejects Plaintiff's argument that any time a party violates a regulatory document retention requirement there is a de

---

[5] ECF No. 55-2 at 1 ("We demand that you preserve, protect, and immediately hand over any and all evidence you have in regard[] to the incident in question. This includes, but is not in any way limited to, any video or photos of the incident, any statements made by any employees or any other witnesses to the incident, the names and contact information of your employees involved in the incident, the names and contact information of any witnesses to the incident, and any other information or evidence which may be relevant to the case.").

facto intentional spoliation as it pertains to Rule 37(e)(2).[6] Perhaps B&S acted negligently in failing to ensure that Jesse Fernandez did not leave its employ with the Keep Trucking program or that it was negligent in not preserving a backup of the program and that has prejudiced the Plaintiff, but the introductory paragraph of Rule 37(e) must first be established.

Plaintiff's Motion for Sanctions Due to Spoliation of Evidence (ECF No. 55) is **DENIED** without prejudice to refiling.

### Motion for Judgment on Partial Findings (ECF No. 38)

Defendant Arias-Padilla argues that, as a matter of law, she is entitled to summary judgment on Plaintiff's claim of gross negligence. B&S argues that it is entitled to summary judgment on Plaintiff's "direct negligence" claims.

Notwithstanding the number of pages that Plaintiff devotes to the gross negligence claim, he argues that Arias-Padilla was grossly negligent because she unsafely changed lanes. "Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016); *see also Sheppard v. R&S Transp., LLC*, No. 5:16CV141-RWS-CMC, 2018 WL 2292818, at *12 (E.D. Tex. Apr. 25, 2018), *report and recommendation adopted*, No. 5:16CV141-RWS-CMC, 2018 WL 2287611 (E.D. Tex. May 18, 2018) (for a discussion of other cases where

---

[6] See Fed. R. Civ. P. 37(e), Committee Notes on Rules—2015 Amendment ("Although the rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation, courts may sometimes consider whether there was an independent requirement that the lost information be preserved. Such requirements arise from many sources — statutes, administrative regulations, an order in another case, or a party's own information-retention protocols. The court should be sensitive, however, to the fact that such independent preservation requirements may be addressed to a wide variety of concerns unrelated to the current litigation. The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case.").

the plaintiff's allegations of gross negligence were dismissed by summary judgment). Defendant Arias-Padilla is entitled to summary judgment on the gross negligence claim.

About the negligent hiring, training, supervision, retention and entrustment claims[7], B&S argues that such claims asserted against it are barred because it acknowledges that Arias-Padilla was driving in the course and scope of her employment with B&S.[8] The Court agrees. "Texas courts have underscored that, in cases involving only ordinary negligence, any direct liability claim for negligence (such as negligent hiring or negligent entrustment) and a claim for vicarious liability under a theory of respondeat superior are generally "mutually exclusive modes of recovery." *Plascencia v. Hillman*, No. EP-19-CV-40-PRM, 2019 WL 4087439, at *3 (W.D. Tex. July 3, 2019). When an employer stipulates to vicarious liability, "the employee's competence and the employer's own negligence in hiring, failing to properly train, or negligently supervising become irrelevant." *Williams v. McCollister*, 671 F. Supp.2d 884, 888 (S.D. Tex. 2009). "Thus, a plaintiff may not advance ordinary negligence claims against an employer under both vicarious liability (respondeat superior) and direct liability (negligent hiring and negligent supervision) "where the derivative liability of the owner has already been established by an admission or stipulation of agency or course and scope of employment." *Kuss v. Ulmer*, No. SA-19-CV-629-JKP, 2021 WL 1433062, at *5 (W.D. Tex. Mar. 17, 2021).

---

[7] In specific, Plaintiff argues that because at some time prior to Arias-Padilla's employment she tested positive for some unknown drug, B&S should have required Arias-Padilla to complete a DOT-mandated program before being allowed to drive.  The facts were not clearly set forth in any of the briefing.  It is not certain when she failed any drug test, and whether post-failure she thereafter completed the DOT program with any employer prior to joining B&S.  Finally, there is only conjecture advanced by the Plaintiff that Arias-Padilla may have been impaired at the time of this incident.  Law enforcement officers who responded to the scene did not report that they suspected any impairment or use of alcohol or drugs. In any event, this claim fails because the employer has stipulated to the course and scope.

[8] Plaintiff argues that this is a contested fact. As stated above, it no longer is as B&S unconditionally stipulated to this at the April 27 hearing.

Plaintiff argues that *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489 (Tex. App. – Ft. Worth 2002) holds that direct liability claims could still survive. In that case, a supervisor intentionally assaulted Mr. Wrenn. The Court concluded that the supervisor "was not authorized by GATX to utilize physical force against Wrenn, that the assault arose out of personal animosity towards Wrenn, and that the assault was not committed in furtherance of GATX's business." Thereafter the court allowed a negligent supervision claim to go forward, concluding that there was an issue of fact as to whether Wrenn's injuries were a foreseeable consequence of GATX's supervision of the supervisor. The difference in *Wrenn* and this case, however, is that the employer in *Wrenn* denied respondent liability; here, B&S stipulates to course and scope of employment. Defendant B&S is therefore entitled to summary judgment on the direct liability negligence claims.

**Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Stephen Earle, M.D. (ECF No. 51)**

Defendants served a subpoena for records to Dr. Earle and on September 13, 2022, they received about 24 pages of documents. On February 15, 2023, Dr. Earle was deposed, and the morning (or evening before), Dr. Earle was provided with many other medical records and documents about the Plaintiff. During the examination of Dr. Earle, Plaintiff's counsel used a PowerPoint demonstration and proceeded to ask questions unrelated to the doctor's treatment of the Plaintiff. Sometime in 2009, a 55-gallon drum struck Plaintiff on the head when he served in the Armed Forces. Plaintiff's counsel asked Dr. Earle to opine on several issues related to that injury, the VA's disability rating, and whether the 2021 accident may have exacerbated those preexisting injuries and whether the 2009 injuries had resolved favorably before the 2021 accident.

Pursuant to Fed. R. Civ. P. 26(a)(2), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. The "disclosure must be accompanied by a written report—prepared and signed by the

9

witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[9]

Yet even if a written report is not required because the individual has not been retained or specially employed to provide expert testimony, a disclosure must still be made that states: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."[10]

As noted in the Rule 26, Committee Notes on Rules—2010 Amendment:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

The Court notes that this is not the first time the issue of whether Dr. Earle is a mere treating provider, or a testifying expert, has arisen. *See, e.g.*, *Marchlewicz v. Bros. Xpress, Inc.*, No. SA-19-CV-00996-DAE, 2020 WL 7319550, at *1 (W.D. Tex. Dec. 10, 2020) (a case involving the same law firms as in this case); *see also Hada v. United States*, No. 5:19-CV-129-OLG, 2021 WL 6774905, at *1 (W.D. Tex. Apr. 9, 2021) (where it was represented that Dr. Earle only received a $375 consultation charge and an unstated amount for his deposition) (Law Offices of Thomas J. Henry also involved in that case).

"[A]lthough '[n]onretained experts are not required to submit reports,' Rule 26(a)(2)(C) 'is intended to ensure that an opposing party has some notice of what the nonretained expert will

---

[9] FED. R. CIV. P. 26(a)(2)(B).
[10] FED. R. CIV. P. 26(a)(2)(C).

testify about'; therefore, the disclosure must, at the very least, 'state opinions, not merely topics of testimony' and 'contain [ ] a summary of the facts upon which the opinions are based.'" *Sterling v. United States*, No. 3:18-CV-0526-D, 2020 WL 2425648, at *4 (N.D. Tex. May 12, 2020), *aff'd*, 834 F. App'x 83 (5th Cir. 2020). A party's expert disclosure satisfies the lesser Rule 26(a)(2)(C) fact and opinion summary requirement where it includes an 'abstract, abridgement, or compendium' of the expert's expected testimony." *Newton v. State Farm Lloyds*, No. 421CV00322SDJCAN, 2022 WL 1217410, at *4 (E.D. Tex. Mar. 31, 2022), *report and recommendation adopted*, No. 4:21-CV-322, 2022 WL 1214260 (E.D. Tex. Apr. 25, 2022). At a minimum, Plaintiff here has disregarded the requirements of Rule 26(a)(2)(C). Defendant suggests that Dr. Earle may have received $10,000 in compensation in this case. Accordingly, Plaintiff may have also violated Rule 26(a)(2)(B).

In deciding whether to exclude an expert from testifying, the Court must apply a four-factor standard established by the Fifth Circuit in *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996) ((1) the explanation for the party's failure to comply; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; (4) the availability of a continuance to cure such prejudice); *see also StoneCoat of Texas, LLC v. ProCal Stone Design*, LLC, No. 4:17CV303, 2019 WL 9899919, at *10 (E.D. Tex. June 28, 2019). Here, Plaintiff's counsel provides no real excuse, but the testimony is important to the Plaintiff. Further, the Court can cure any prejudice to the Defendants by crafting a remedy that still serves as a deterrent to any future flouting of the discovery rules.

If the Plaintiff intends to call Dr. Earle as a witness in this case as a medical provider, he must comply with Rule 26(a)(2)(C). If Plaintiff intends to elicit medical opinions beyond answers regarding the treatment Dr. Earle may have provided, Plaintiff should comply with Rule

26(a)(2)(B). After any such reports are provided, Defendants may re-depose Dr. Earle. All expenses, to include attorney's fees and any fees charged by Dr. Earle, incurred as the result of any new deposition of Dr. Earle is to be borne by the Plaintiff.

**Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Russell Gill (ECF No. 52)**

Russell Gill is an accident reconstructionist. Defendants seek to limit some of his opinions which they contend go beyond his field (e.g., discussing driver logs, Federal Motor Carrier Safety Regulations, the Texas Transportation Code). During the April 27, 2023 hearing, Plaintiff's counsel stipulated that Mr. Gill will be asked only to opine on accident reconstruction and that he will not be offering opinions on any of these other matters. At trial, the Court will limit Mr. Gill's testimony accordingly.

**Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Kerry Nelson (ECF No. 53)**

Plaintiff has retained Mr. Nelson as a fleet safety expert. He is expected to opine that Arias-Padilla was negligent in her operation of the 18-wheeler and that her acts violated certain aspects of the Texas Transportation Code. He is also expected to opine that B&S violated various aspects of the Federal Motor Carrier Safety regulations (e.g., no driver safety training program, failure to maintain driver logs, any drug/alcohol blood test post-accident was done not in accordance with DOT regulations, pre- and post-trip vehicle inspection records not maintained, etc.).

Because the direct liability negligence claims have all been dismissed, opinions by Mr. Nelson on all these subjects are no longer relevant. Accordingly, he will be precluded from rendering any expert opinions at trial on these subjects.

Otherwise, Plaintiff concedes that Mr. Nelson is not an accident reconstruction expert. Accordingly, the Court will not permit him to testify regarding his opinions that Arias-Padilla (1)

failed to keep a safe distance from Plaintiff; (2) failed to engage in a proper and timely evasive action before the collision; and (3) was responsible for the collision and Plaintiff's injuries. *See Alpizar v. John Christner Trucking, LLC*, No. SA-17-CV-00712-FB, 2019 WL 1643743, at *10 (W.D. Tex. Apr. 16, 2019), *report and recommendation adopted*, No. CV SA-17-CA-712-FB, 2019 WL 4087445 (W.D. Tex. May 17, 2019). Mr. Nelson will be permitted to testify about a commercial motor vehicle operator's obligations generally; he will not be permitted to testify regarding Arias-Padilla's failure to comply with those obligations. *See Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 WL 3074420, at *10 (W.D. Tex. June 10, 2020).

## CONCLUSION

Defendants' Motion for Judgment on Partial Findings (ECF No. 38) is **GRANTED**. Defendants' Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Stephen Earle, M.D. (ECF No. 51) is **GRANTED**, but Plaintiff is given the opportunity to cure as stated above. Defendants' Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Russell Gill (ECF No. 52) is **GRANTED** as stated above. Defendants' Motion to Strike or Limit the Testimony of Plaintiff's Expert Witness Kerry Nelson (ECF No. 53) is **GRANTED IN PART** and **DENIED IN PART** as stated above. Finally, Plaintiff's Motion for Sanctions Due to Spoliation of Evidence (ECF No. 55) is **DENIED** without prejudice to refiling.

It is so **ORDERED**.

**SIGNED** this 1st day of May, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE